IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JAIME GONZALO CASTIBLANCO CABALCANTE | § § § | |
| vs. | § § | CIVIL NO. 4:16CV964<br>CRIMINAL NO. 4:09CR194(9) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

The following are pending before the Court:

1. Petitioner's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. #1);

2. Petitioner's supplemental brief in support of his 28 U.S.C. § 2255 motion (Dkt. #6);

3. Affidavit of Carlo D'Angelo (Dkt. #8);

4. Government's response to Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. #10); and

5. Petitioner's reply to the Government's response to the Petitioner's § 2255 motion (Dkt. #12).

Having considered the Petitioner's motion and the responsive briefing thereto, the Court finds that the motion should be denied.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The United States Court of Appeals for the Fifth Circuit discussed the factual and procedural history of the Petitioner's case as follows:

> In October 2009, a grand jury returned a two-count indictment charging twenty-seven defendants with participation in a vast Colombian conspiracy to import cocaine into the United States. Count One charged a conspiracy offense under 21 U.S.C. § 963, alleging: (1) the defendants conspired to knowingly and intentionally import five or more kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 952 and 960; and (2) the defendants conspired to knowingly and

1

intentionally manufacture and distribute five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959 and 960. Count Two alleged that the defendants aided and abetted each other while intentionally and knowingly manufacturing and distributing five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2.

Nineteen of the twenty-seven defendants pled guilty, two died before they could be extradited to the United States, and two fled and remain fugitives. The four remaining defendants—appellants here—went to trial: Jaime Gonzalo Castibl Cabalcante ("Cabalcante"), Oscar Orlando Barrera Piñeda ("Piñeda"), Julio Hernando Moya Buitrago ("Moya"), and Roberth William Villegas Rojas ("Rojas").

The trial focused primarily on two drug transactions. The first transaction was a thwarted attempt in December 2007 to move at least 1,000 kilograms of cocaine from Colombia to Guatemala and, from there, to the United States–Mexico border and then into the United States. This particular plan involved a plane with tail number HP1607, and thus was often referred to by the parties as the HP1607 flight or the HP1607 deal. Cabalcante brokered the HP1607 deal by introducing the Colombian suppliers to the Mexican buyers, members of the Los Zetas drug cartel. The Zetas paid about $7.9 million for this deal—an amount that would have purchased several thousand kilograms of cocaine in 2007.

In Colombia, Carlos Eduardo Gaitan–Uribe ("Gaitan"), who was indicted in this conspiracy but died before trial, coordinated logistics by recruiting pilots, maintaining airplanes, securing clandestine airstrips, and contacting corrupt air traffic controllers. Defendant Moya, an air traffic controller who worked as a supervisor at the El Dorado International Airport in Bogota, agreed to help Gaitan get HP1607 through Colombian airspace. Defendant Piñeda was the pilot who flew HP1607 from Bogota to Panama for staging. Piñeda also coordinated the pilots who then flew the plane from Panama back into Colombia to pick up the cocaine.

HP1607's return trip to Colombia on December 20, 2007, did not go as planned. The Colombian Air Force detected the plane heading back to Colombia and sent a plane to follow HP1607 until it landed at a clandestine air strip. Because the Air Force failed to make contact with HP1607 before it landed, the Air Force dispatched a combat aircraft to the landing strip. After firing warning shots with no response, the Air Force fired at HP1607 and destroyed it. In a wiretapped call after the thwarted HP1607 flight, Piñeda commented that they "were left without Christmas" and could instead "get together and cry together" about the failed flight. The Zetas held Cabalcante responsible for the failed transaction, holding him hostage for three months.

2

> Although he was not involved in the HP1607 transaction, Defendant Rojas was involved in other cocaine transactions. Rojas was connected to the conspiracy through a drug trafficker named German Giraldo Garcia (alias "El Tio"), who was indicted in this case but remains a fugitive. El Tio worked with David Quinones ("Quinones"), Gaitan's logistics partner, to build an organization to import drugs into the United States. The main transaction concerning El Tio that the parties focused on at trial involved a deal he made in 2008 with a cocaine supplier named Jamed Colmenares (alias "El Turco"). Rojas was El Turco's right-hand man. The buyer for this $1.1 million deal was a Mexican man called "Chepa." This transaction also failed when, on October 22, 2008, the Colombian National Police intercepted a truck carrying about 1,000 kilograms of cocaine.
>
> After Chepa held El Tio hostage for failing to deliver the cocaine, Chepa and El Tio agreed that El Tio would have to make up for the lost truck load. On November 26, 2008, El Tio had a meeting with Quinones, El Turco, and Rojas to plan their second attempt. Five days after the meeting, Rojas said over the phone that he had half the "luggage" at his house and was waiting for El Tio to tell him when to transport the load to an airplane so that it could be flown to Central America.
>
> The Colombian National Police again thwarted this plan the very next day when the police seized 286 kilograms of cocaine found in a parked truck. Rojas paced the street in front of the parking lot while the police searched the truck. On a wiretapped call, Rojas told his boss, El Turco, that the cocaine had been seized again.

*United States v. Rojas*, 812 F.3d 382, 388–90 (5th Cir. 2016).

At the conclusion of "a three-week trial, a jury found four defendants," one being the Petitioner herein, "guilty of conspiring to knowingly or intentionally import five or more kilograms of cocaine into the United States in violation of 21 U.S.C. §§ 959 and 960, and all in violation of 21 U.S.C. § 963." *Id*. at 388. "The jury also found three of the four defendants" (one being the Petitioner herein) "guilty of aiding and abetting each other while distributing five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2." *Id*.[1]

---

[1] The Honorable Marcia Crone presided over the trial of this case. On January 13, 2015, Judge Crone signed an order transferring this case to the undersigned, the Honorable Amos L. Mazzant, III. The order was entered on January 14, 2015. *United States v. Cabalcante*, 4:09-cr-194 (Dkt. #1272).

The Petitioner filed a direct appeal to the United States Court of Appeals for the Fifth Circuit. On appeal, the Petitioner raised the following issues:

1. The validity and extraterritoriality of 21 U.S.C. §§ 959 and 963;

2. Venue was not proper in the Eastern District of Texas;

3. The district court erred by failing to give two proposed jury instructions on venue;

4. The district court erred because it denied the Petitioner's motion to suppress wiretap conversations that were recorded in Columbia;

5. The district court erred because it denied the Petitioner's motion for new trial based on prosecutorial misconduct;

6. The district court erred because it declined to give the Petitioner's requested jury instruction on specific intent;

7. The evidence was insufficient to support the Petitioner's conviction;

8. The district court erred by admitting into evidence cocaine that was seized from the boat *Avante*;

9. The district court erred because it declined to instruct the jury on withdrawing from a conspiracy;

10. A material variance existed between the conspiracy charged and the evidence offered at trial, thus warranting a reversal of the Petitioner's conviction; and

11. The district court erred by permitting the Government to refer to the American dollar in its rebuttal argument.

The Fifth Circuit affirmed the Petitioner's conviction and sentence on January 28, 2016. The Supreme Court of the United States denied the Petitioner's petition for a writ of certiorari on June 6, 2016. On December 16, 2016, the Petitioner filed this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, alleging the following grounds for relief:

4

1. The Petitioner received the ineffective assistance of trial counsel[2] because counsel failed to move the trial court to reconsider his motion for new trial; and

2. The Petitioner received the ineffective assistance of appellate counsel because:

   A. Counsel failed to argue on appeal that "the district court committed structural error when the judge answered 'no' to a jury's query";

   B. Counsel failed to argue on appeal that "the method by which the jury reached the ultimate conclusion of guilty on Count One offends elementary principles of logic and [the] Due Process Clause of [the] Fifth Amendment";

   C. Counsel failed to argue on appeal "on Count Two, [that] the government failed to prove the manufacture or distribution element and failed also in establishing a guilty principal"; and

   D. Counsel failed to argue on appeal that "the trial Court erred in admitting the Petitioner's prior money laundering convictions."[3]

## DISCUSSION AND ANALYSIS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a

---

[2]Mr. Carlo D'Angelo represented the Petitioner at trial and on appeal.

[3]The Petitioner also asserts that he is actually innocent of the crimes charged. However, since the Petitioner presented no argument in support of his actual innocence claim, the court need not address it.

habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

## PROCEDURAL BAR

It is well-settled that, absent countervailing equitable considerations, a § 2255 movant cannot relitigate issues raised and decided on direct appeal. *United States v. Rocha,* 109 F.3d 225, 299 (5th Cir. 1997); *Withrow v. Williams*, 507 U.S. 680 (1993). "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are [generally] not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). It is also well settled that a collateral challenge may not take the place of a direct appeal. *Shaid*, 937 F.2d at 231. Accordingly, if the Petitioner raised, or could have raised, constitutional or jurisdictional issues on direct appeal, he may not raise them on collateral review unless he shows either cause for his procedural default and actual prejudice resulting from the error, or demonstrates that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent. *Id*. at 232.

## LAW APPLICABLE TO THE PETITIONER'S CLAIMS

The Petitioner couches all of his claims in terms of receiving the ineffective assistance of counsel. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir.

6

1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonably professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697.

### 1. MOTION FOR RECONSIDERATION

In his first argument, the Petitioner contends that his trial counsel was ineffective for failing to move the district court to reconsider its denial of his motion for new trial. Although the Petitioner raised more than one issue in his motion for new trial, the Petitioner, at this juncture, focuses his attention on his counsel's alleged failure to move the district court to reconsider its denial of his motion for new trial regarding the court's response to a jury note during deliberations. The district court thoroughly addressed the issue of the jury note in its order denying the Petitioner's motion for new trial. *See United States v. Cabalcante*, 4:09-cr-194 (Dkt. #978). The district court analyzed the issue as follows:

> 1. Response to Jury Question
>
> "Supplemental instructions must be 'reasonably responsive' and 'allow[] the jury to understand the issue presented to it.'" *United States v. Hale*, 685 F.3d 522, 544 (5th Cir.), *cert. denied*, 133 S. Ct. 559 (2012) (quoting *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999)). "When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with 'concrete accuracy.'" *United States v. Stevens*, 38 F.3d 167,

7

169-70 (5th Cir. 1994) (quoting *United States v. Carter*, 491 F.2d 625, 634 (5th Cir. 1974)). "If, in response to a jury question, the trial court directs the jury's attention to the original instructions, the response will be deemed sufficient if the original charge is an accurate statement of the law." *United States v. Marshall*, 283 F. App'x 268, 279 (5th Cir.), *cert. denied*, 555 U.S. 1005 (2008) (citing *United States v. Arnold*, 416 F.3d 349, 359 n.13 (5th Cir.), *cert. denied*, 546 U.S. 970 (2005)). Furthermore, "[t]here is nothing wrong in responding in a narrow fashion allowing the jury to decide if the answer is responsive." *United States v. Stowell*, 947 F.2d 1251, 1257 (5th Cir. 1991), *cert. denied*, 503 U.S. 908 (1992).

In this case, the jury sent the following note to the court after starting its deliberations:

> We the jury, request the following: Re: Count One
> If we agree there was a conspiracy, must we believe that <u>each</u> defendant knew or intended importation to the U.S.? Or if we believe there was a conspiracy and only one or two defendants had knowledge of importation to the U.S., can we find all four guilty of Count One?

After reading the note to the parties, the court discussed with counsel in open court the manner in which to respond. The court immediately recognized that the note revealed the jury's misunderstanding concerning which defendants were charged in Count One. As noted previously, Barrera was not prosecuted as to Count One, meaning that only three defendants, not four, were charged with that count. All parties agreed that the misunderstanding should be addressed in the court's response. After further consulting with the parties, the court answered the jury's note as follows:

> No, please note that only 3 of the defendants are charged in Count One of the Indictment. Please read carefully the instructions regarding Count One found on pages 13-15 of the Court's instructions to the Jury as well as the remainder of the instructions.

In his motion, Moya[4] contends that the court should have bifurcated its response to the note by answering "yes" to the first question and "no" to the second one. The court, however, finds the response to be adequate.

First, the record demonstrates that counsel for Moya agreed with the court that the answer to the jury's note should have been "no." Moya's counsel stated:

---

[4]The district court noted that the Petitioner's "arguments concerning the court's response to the jury note are substantively similar to those made by [co-defendant] Moya and likewise fail to demonstrate that a new trial should be granted." *United States v. Cabalcante*, 4:09-cr-194 (Dkt. #978) at p. 13.

"Your Honor, I agree with the Court that you should answer no." Later, he reiterated his position by saying: "That's why I'm requesting that the answer should be no." At no time did he ask the court to treat the note as two distinct questions or argue that the correct answer was "yes." Counsel objected to the court's response, but only because it did not specifically direct the jury's attention to the part of the jury instructions discussing multiple defendants and multiple counts. While not dispositive, counsel's remarks reflect the parties' agreement that the answer to the note should have been "no."

Moreover, the court's response was proper because it specifically directed the jury to the instructions concerning Count One of the Indictment. In the instructions, the three elements of the offense are described in precise detail. The first element requires the government to prove that a defendant reached an agreement to either distribute, manufacture, or import cocaine "intending or knowing that such substance would be unlawfully imported into the United States" in order to obtain a guilty verdict. This language, which Defendants did not challenge and do not now claim to be incorrect, accurately states the law and provides the answer to the jury's question.

Thus, in answering the jury note, the court consulted with the parties, accurately answered the note, and directed the jury to consider the court's instructions, particularly the section outlining the requirements for a guilty finding under Count One. Accordingly, the record reveals no error requiring a new trial on this basis. Therefore, Moya's motion for new trial on the ground that the court erred in responding to the jury note is denied.

*United States v. Cabalcante*, 4:09-cr-194 (Dkt. #978) at pp. 4-6 (internal footnote omitted).

While a motion for reconsideration is a "legitimate procedural device" in a criminal proceeding, *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982), it has its limitations. Where, as here, the district court fully analyzed the issue of the jury note, there was no reason for trial counsel to return to the district court seeking a reconsideration. Mere disagreement with a court's order does not require counsel to move for reconsideration of the same. As such, the Petitioner's ineffective assistance of counsel claim fails.

### 2. STRUCTURAL ERROR

In his second argument, the Petitioner argues that his counsel was ineffective for failing to

argue on appeal that "the district court committed structural error when the judge answered 'no' to a jury's query." The basis for the Petitioner's argument stems from the above-referenced analysis.

According to the Petitioner, the district court's "no" response to the jury's question during deliberations relieved the jury from considering the knowledge element in counts one and two of the indictment. The Petitioner thus contends that his counsel was ineffective for failing to argue on appeal that the district court incorrectly responded to the jury's question, thereby committing structural error.

> "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. ——, ——, 137 S.Ct. 1899, 1907, 198 L.Ed.2d 420 (2017). "Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ). In *Weaver*, the Supreme Court laid out three broad categories of structural error: first, "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," *id.* at 1908 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (deprivation of the right to self-representation at trial) ); second, "if the effects of the error are simply too hard to measure," *id.* (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of grand jurors of defendant's race) ); and third, "if the error always results in fundamental unfairness," *id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of counsel), and *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable doubt instruction) ). However, "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.*

*United States v. Nepal*, 894 F.3d 204, 212 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 831, 202 L. Ed. 2d 580 (2019).

Responding to a jury's interrogatory, "though, does not fall into any of these categories, nor

is the error in [the Petitioner's] case on the same level as the errors targeted in the Court's structural error jurisprudence." *Id*. at 212. "Indeed, [a district court's response to a jury's inquiry during deliberations] is a far cry from deprivation of counsel, deprivation of the right to self-representation, or unlawful exclusion of grand jurors of the defendant's race." *Id*. at 212-13.

> Furthermore, and perhaps more importantly, none of the Supreme Court's structural error cases are direct appeals from judgments of conviction within the federal system . . .; they are either appeals from state courts which had considered the error under their own rules or federal habeas challenges to state convictions. *See Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (rejecting federal defendant's argument that the error in her trial was structural: "the seriousness of the error claimed does not remove consideration of it from the ambit of" Rule 52(b), "which by its terms governs direct appeals from judgments of conviction in the federal system"; creating an exception to Rule 52(b) to accommodate the error of which defendant complained would be "[e]ven less appropriate than an unwarranted expansion of the Rule").

*Id*. at 212–13.

Since the Petitioner's claim does not rise to the level of structural error, the Petitioner's argument that counsel was ineffective for failing to raise the same on appeal lacks merit. The Petitioner's claim, therefore, fails.

    **3.**    **DUE PROCESS**

In his third argument, the Petitioner argues that his counsel was ineffective for failing to argue on appeal that "the method by which the jury reached the ultimate conclusion of guilty on Count One offends elementary principles of logic and [the] Due Process Clause of [the] Fifth Amendment." More specifically, the Petitioner contends that "[t]he ultimate conclusion for the jury to draw, that is, that the cocaine will be imported into the United States, is based not upon a fact but upon a circumstance in proof, that is, that the cocaine would reach Guatemala. It offends a due process principle that 'charges of conspiracy are not to be made by piling inference upon

11

inference.'" (Dkt. #1, p. 6).

The Petitioner's argument ignores the fact that his counsel did, in fact, raise on appeal the sufficiency of the evidence regarding the Petitioner's intent to import cocaine into the United States. In evaluating the sufficiency of the evidence, the Fifth Circuit found as follows:

> Three of the defendants—Cabalcante, Piñeda, and Rojas—challenge the sufficiency of trial evidence proving that they committed the Count One conspiracy offense and the Count Two distribution offense with the necessary intent or knowledge that the cocaine would be unlawfully imported into the United States. To establish the mens rea element of either offense, the government needed to prove that the defendants either intended or knew that the drugs would be unlawfully imported into the United States. *See* 21 U.S.C. § 959(a); *Conroy*, 589 F.2d at 1270. The government could prove the defendants' intent or knowledge by "circumstantial evidence alone." *Medina*, 161 F.3d at 872; *see United States v. Conlan*, 786 F.3d 380, 385 (5th Cir.2015).
>
> Cabalcante and Piñeda argue that the government's evidence showed "no intent to import or distribute cocaine outside of Latin America," and Rojas suggests that the end point for the cocaine could have been Guatemala or Mexico. They point out on appeal, as they argued strenuously to the jury, that the cocaine in this case was destroyed or confiscated while still in South America and thus never actually reached the United States.
>
> _____
>
> The government also introduced circumstantial evidence of intent or knowledge specific to each defendant. Cabalcante confessed to participating in the conspiracy. After his arrest, he told the DEA that he had referred his Colombian counterparts to the Zetas for the HP1607 deal. He informed the DEA that the deal was worth $7.9 million. Cabalcante also admitted that when the deal fell through, the Zetas held him responsible. To smooth over the failed deal, he went to Matamoros, Mexico—on the Mexican side of the United States—Mexico border near Brownsville, Texas—to meet with the Zetas. This evidence showed that Cabalcante was aware that the cocaine was headed to the Zetas at the United States—Mexico border and that the multi-million dollar deal was paid for in American dollars. Combined with the evidence that his co-conspirators knew that drugs heading to Mexico almost always ended up in the United States, the evidence from Cabalcante's own confession supports the jury's verdict.

*Rojas*, 812 F.3d at 400-401 (footnote omitted).

The issue concerning the sufficiency of the evidence with respect to the Petitioner's intent to import cocaine into the United States was raised on direct appeal and rejected by the United States Court of Appeals for the Fifth Circuit. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986)(internal citations omitted). *See also United States v. Johnson*, 615 F.2d 1125, 1128 (5th Cir. 1980) ("[w]hen an issue has already been determined on direct appeal, a Court need not reconsider it on a Section 2255 motion."); *Ugarte-Veizaga v. United States*, 452 F.2d 1194, 1195 (5th Cir. 1972) ("[a] Section 2255 motion cannot be used in lieu of an appeal on the merits nor will issues disposed of on a previous appeal be reviewed again on such a motion."). Since the Petitioner's counsel clearly raised the sufficiency of the evidence regarding the Petitioner's intent to import cocaine into the United States on direct appeal, and the Fifth Circuit rejected the same, this Court will not revisit the same issue even though it is couched in terms of counsel providing ineffective assistance. Since counsel raised the issue on direct appeal, it cannot be said that counsel was ineffective on this basis. The Petitioner's claim therefore fails.

### 4. MANUFACTURE OR DISTRIBUTION ELEMENT

In his fourth argument, the Petitioner argues that his counsel was ineffective for failing to argue on appeal that "on Count Two, [that] the government failed to prove the manufacture or distribution element and failed also in establishing a guilty principal." However, counsel for the Petitioner did, in fact, argue on appeal the sufficiency of the Government's evidence with respect to Count Two. Since counsel raised the sufficiency of the evidence with respect to Count Two on direct appeal and the Fifth Circuit rejected the same, this Court will not revisit this issue at this time

even though it is couched in terms of counsel providing ineffective assistance. Since counsel raised the issue on direct appeal, it cannot be said that counsel was ineffective on this basis. The Petitioner's claim therefore fails.

   5.   **PRIOR CONVICTIONS**

In his fifth and final argument, the Petitioner argues that his counsel was ineffective for failing to argue on appeal that "the trial Court erred in admitting the Petitioner's prior money laundering convictions." At trial, the district court admitted into evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, evidence concerning (1) the Petitioner's 1997 conviction for conspiracy to violate currency transaction requirements and to conduct financial transactions involving proceeds from narcotics activity, and (2) his 2003 conviction for money laundering. The district court issued a detailed order explaining the admissibility of the prior convictions. *United States v. Cabalcante*, 4:09-cr-194 (Dkt. #827). Additionally, the district court stated that although the prior convictions were admissible, a limiting instruction at the time of trial would be required. *Id*. at p. 4. Indeed, the jury was instructed not to "consider any of this evidence in deciding if the defendant committed the acts charged in the Indictment." *United States v. Cabalcante*, 4:09-cr-194 (Dkt. #896, p. 9). Given that the Fifth Circuit found that the evidence at trial was sufficient to support the Petitioner's convictions, and since the jury was instructed not to consider the Petitioner's prior convictions in reaching its guilty verdict, the Court is not convinced that the Petitioner could have been harmed because his counsel did not raise this issue on appeal. The Petitioner's claim fails.

## **CONCLUSION**

Based on the foregoing, the motion for relief pursuant to 28 U.S.C. § 2255 is denied and the

case is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although the Petitioner has not yet filed a notice of appeal, the Court, nonetheless, addresses whether the Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Petitioner is not entitled to a certificate of appealability.

It is therefore **ORDERED** that the motion to vacate, set aside, or correct sentence is **DENIED**, and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 31st day of March, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE